Derry District Court
No. 2001-607

Salem District Court
No. 2002-143

THE STATE OF NEW HAMPSHIRE

v.

TRACIE ROLLINS-ERCOLINO

THE STATE OF NEW HAMPSHIRE

v.

HILARY KULUNIS

Argued: November 13, 2002
Opinion Issued: April 18, 2003

*Philip T. McLaughlin,* attorney general (*Stephen D. Fuller,* senior assistant attorney general, on the brief and orally), for the State.

*Moir & Brodich, PA,* of Concord (*James H. Moir* on the brief and orally), for the defendant, Tracie Rollins-Ercolino.

*David M. Rothstein,* deputy chief appellate defender, of Concord, by brief and orally, for the defendant, Hilary Kulunis.

NADEAU, J. We consolidated these cases to answer recurring questions about the validity of our vehicular assault statute, RSA 265:79-a (Supp. 2002), which provides:

> Any person who, without intent, causes death or serious bodily injury as defined in RSA 625:11, VI to another while using a vessel or propelled vehicle as defined in RSA 637:9, III shall be guilty of a class A misdemeanor, where such person's unlawful operation of the propelled vehicle or vessel causes or materially contributes to the collision. Evidence that the driver violated any of the rules of the road shall be prima facie evidence that the driver caused or materially contributed to the collision.

In each case before us, the State charged the defendant, under this statute, with causing a motor vehicle accident resulting in death or serious bodily injury.

In the first case, the State appeals an order of the Derry District Court (*Warhall*, J.) dismissing its vehicular assault complaint against the defendant, Tracy Rollins-Ercolino, because the statute did not require the State to prove a criminal intent to obtain a conviction and improperly shifted the burden of proof to the defendant. In the second case, the Salem District Court (*Korbey*, J.) transferred three questions without ruling on the validity of the language of the vehicular assault statute, when presented with a motion to dismiss the vehicular assault complaint filed against the defendant, Hilary Kulunis. *See* SUP. CT. R. 9. We now reverse the dismissal of the Derry District Court complaint and remand both cases to their respective courts for proceedings consistent with this opinion.

The first question we must address is whether the statutory language "without intent" allows a defendant to be convicted of a class A misdemeanor in violation of RSA 626:2, I (1996), which allows a person to be found guilty of a misdemeanor only when he or she "acts purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense." We have held that a person cannot be convicted of a crime without proof that his or her unlawful act was accompanied by a culpable mental state. *See State v. Goodwin*, 140 N.H. 672, 673 (1996).

When a criminal statute does not provide for a specific mental state, "we read RSA 626:2, I, as requiring proof of a culpable mental state which is appropriate in light of the nature of the offense and the policy considerations for punishing the conduct in question." *State v. Bergen*, 141 N.H. 61, 62 (1996) (quotation omitted). The appropriate culpable mental state will then be applied to all material elements of an offense unless a contrary purpose appears in the language of the statute. *See* RSA 626:2, I.

The material elements of the vehicular assault statute are: (1) the unlawful operation of a vessel or propelled vehicle, which means a violation of one of the rules of the road or waterways of this State; (2) a collision caused or materially contributed to by the unlawful operation; (3) death or serious bodily injury resulting from the collision; and (4) a culpable mental state. *See* RSA 265:79-a. The statutory language, however, states: "Any person who, *without intent*, causes death or serious bodily injury . . . while using a vessel or propelled vehicle . . . ," *id.* (emphasis added), demonstrating a clear purpose to distinguish the element of death or serious bodily injury from the remainder of the offense. *See* RSA 626:2, I. This indicates that the legislature intended to treat the element of death or serious bodily injury differently from the other elements of the statute. *But cf. State v. Etzweiler*, 125 N.H. 57, 68-69 (1984) (*Souter*, J., concurring specially).

We find, therefore, that under the plain language of the statute the term "without intent" relates only to the ultimate harm resulting from the collision caused by a person's unlawful operation of a vessel or motor vehicle. *Cf. id.* at 66. This means that the applicable culpable mental state for a person's unlawful operation of a motor vehicle which causes a collision need not apply to the resulting harm from that collision. *See id.* The resulting harm of death or serious bodily injury is applicable only to classify the offense as a class A misdemeanor, as opposed to a traffic violation. *See id.* Therefore, we rule that the statutory language "without intent" does not violate the requirements of RSA 626:2, I.

The second question then becomes what culpable mental state applies to the remaining elements of the vehicular assault offense, which the State must prove beyond a reasonable doubt to obtain a conviction. As with all matters of statutory interpretation, we are the final arbiter of the legislature's intent as it is expressed in the words of a statute considered as a whole. *State v. Foss,* 148 N.H. 209, 211 (2002). "Our task is to construe the Criminal Code provisions according to the fair import of their terms and to promote justice." *Id.* (quotation omitted). In doing so, we first look to the plain language of the statute to determine legislative intent. *See State v. Rosario,* 148 N.H. 488, 489 (2002).

When, as here, the statutory language gives us no indication of the legislature's intent and is subject to more than one reasonable interpretation, *see* RSA 265:79-a, we must look further into "the nature of the offense and the policy considerations for punishing the conduct in question." *Bergen,* 141 N.H. at 62 (quotation omitted). Neither vehicular assault nor reckless driving existed at common law. *Cf. Goodwin,* 140 N.H. at 674. Thus, we begin by looking at the legislative history of this and similar statutes to determine the legislature's intent. *See State v. Curran,* 140 N.H. 530, 531 (1995). To avoid contradictory statutory interpretations, we will also consider other indicia such as the title of the statute, *see Rosario,* 148 N.H. at 491, the statute in the context of its overall statutory scheme and the intent behind similar statutory provisions, *see State v. Gifford,* 148 N.H. 215, 216 (2002).

The legislature enacted RSA 265:79-a as one of the "rules of the road" in our Motor Vehicle Code, but titled the statute "Vehicular Assault," which would be an offense more properly included in our Criminal Code. "Although the title of a statute is not conclusive of its interpretation, [it] is significant when considered in connection with the legislative history of the act, and ambiguities inherent in its language." *Rosario,* 148 N.H. at 491 (quotation omitted).

The legislative history of this statute shows it originally was proposed as a new provision in the Criminal Code, to be codified as an assault offense.

*See* N.H.S. BILLS, SB 439-FN (2000); RSA ch. 631 (1996 & Supp. 2002). The bill was adopted, however, as a motor vehicle offense "to fill the gap between a violation of the rules of the road and negligent homicide. . . . It provides for an increased penalty for violating rules of the road when death or serious bodily injury results." N.H.H.R. JOUR. 808 (2000); *see also* N.H.S. JOUR. 1189-90 (2000) (adopting House amendment). Accordingly, to place this statute in its proper context, we turn to its corresponding provisions in both the Criminal and Motor Vehicle Codes. *Cf. Etzweiler*, 125 N.H. at 65-67.

On one side of the gap that the legislature tried to bridge is the negligent homicide statute, RSA 630:3 (1996) (amended 2000), which establishes two criminal offenses. The first offense is a class B felony for persons who cause the death of another negligently, whether or not a motor vehicle is involved. *See* RSA 630:3, I. The second offense is a class A felony for persons who cause the death of another while they are operating a propelled vehicle under the influence of intoxicating liquor or controlled drugs. *See* RSA 630:3, II. The second negligent homicide offense does not enumerate a culpable mental state because we have ruled that driving a propelled vehicle while intoxicated "is criminally negligent *per se.*" *State v. Wong*, 125 N.H. 610, 620 (1984).

On the other side of the gap that the legislature tried to bridge are motor vehicle violations. *See* RSA ch. 265 (1993 & Supp. 2002). One of the more serious motor vehicle violations is reckless driving, *see* RSA 265:79 (1993) (amended 2000, 2001), which establishes a violation for persons who drive a vehicle, or who cause a vehicle to be driven, recklessly so that the lives or safety of the public are endangered. This offense, while designated a traffic violation, carries elevated fines and the potential for a license suspension for persons who violate its terms. It does not require a collision with another vehicle or any actual resulting harm to another person for its violation. Formerly, other than the reckless driving statute, persons driving motor vehicles who caused accidents could be charged with violations only for each individual rule of the road that they broke. *See* RSA ch. 265.

Traffic violations, such as reckless driving, are generally punished only with fines, *see* RSA 651:2, III-a (Supp. 2002), or license suspensions, *see, e.g.*, RSA 265:79. Meanwhile, felonies, such as negligent homicide, must be charged by grand jury indictment and are punishable by lengthy terms of imprisonment. *See* RSA 651:2, I, II (1996 & Supp. 2002). This discrepancy in punishment put local prosecuting authorities in a quandary about how to charge persons who caused accidents resulting in death or serious injury, when those persons committed a traffic violation, and did not intend the ultimate result. *See* N.H.S. JOUR. 376-77 (2000).

■ According to testimony presented to the legislature, the quandary comes from a grand jury hesitancy to indict drivers for negligent homicide when alcohol is not involved. *See* Minutes, SENATE COMMITTEE ON JUDICIARY (Feb. 2, 2000) (comments of Rockingham County Attorney James Reams) (as appended to def. Rollins-Ercolino's br. at 24). Apparently, many grand jurors find the penalty too harsh for what may have been an extremely unfortunate accident that could have happened to anyone. *See id.* At the same time, most citizens feel a traffic ticket is an insufficient penalty for a motor vehicle accident resulting in death or serious bodily injury. *See id.*; *see also* N.H.S. JOUR. 376-77 (2000). By enacting the vehicular assault statute, the legislature sought to establish a misdemeanor charging option for such cases, to provide "an increased penalty for violating rules of the road when death or serious bodily injury results." N.H.H.R. JOUR. 808 (2000).

After enacting the vehicular assault statute, the legislature also enacted a provision for negligent driving to further bridge the gaps in this legislative scheme. *See* RSA 265:79-b (Supp. 2002). The negligent driving statute provides:

> Whoever upon any way drives a vehicle negligently or causes a vehicle to be driven negligently, as defined in RSA 626:2, II(d), or in a manner that endangers or is likely to endanger any person or property shall be guilty of a violation.

RSA 265:79-b. This statute essentially mirrors the existing reckless driving statute, but requires a lower culpable mental state. *Cf.* RSA 265:79.

When we construe all of these statutes together, we find that the legislature intended the vehicular assault statute to require a culpable mental state of criminal negligence. *See* RSA 626:2, II(d) (1996).

While our Criminal Code does not require the State to prove a culpable mental state for motor vehicle violations, it provides four culpable mental states applicable to misdemeanor and felony offenses. *See* RSA 626:2, I. Of these, criminal negligence is the mental state of least culpability. *See* RSA 626:2, II. Criminal negligence also is the culpable mental state required for the State to prove either of the two negligent homicide felony offenses. *See* RSA 630:3; *Wong*, 125 N.H. at 620. Because the legislature intended the vehicular assault statute to bridge the charging gap between the negligent homicide felony offenses and motor vehicle violations, it follows that the mental state applicable to the vehicular assault offense falls between the two. It would be illogical to require the State to prove a higher culpable mental state for the misdemeanor vehicular assault offense than that required for the felony negligent homicide offense. *See Goodwin*, 140 N.H. at 675. We will not interpret a statute to require an illogical result. *See id.*

Therefore, since a mental state must be proved to convict a person of any misdemeanor, we hold that the least culpable mental state of criminal negligence must apply to this offense.

The final question presented by these appeals is whether the last sentence of RSA 265:79-a invalidates the entire statute by shifting unconstitutionally the burden of proof to the defendant. Under the current language of the statute, "[e]vidence that the driver violated any of the rules of the road shall be prima facie evidence that the driver caused or materially contributed to the collision." RSA 265:79-a. This language effectively allows the State to prove the second element of the vehicular assault offense by proving the first element of the offense. This statute is unconstitutional for compelling a defendant either to present evidence or accept the element of the offense as having been proved against him as a matter of law. *See State v. Lapointe*, 81 N.H. 227, 238-39 (1924).

First, this statute invalidly dictates the weight that should be given to evidence of one element, without requiring any form of causal connection with the second element. *See id.* at 239. Our Rules of the Road encompass many more offenses than just the moving violations that may cause a collision. *See* RSA ch. 265. For example, under the current language of the statute, evidence of littering, RSA 265:102 (1993), or crossing a firehose, RSA 265:101 (1993), would constitute *prima facie* proof that a driver caused a collision, without having even a remote causal connection to a collision. As we explained in *Lapointe*, before adopting our Criminal Code:

> The very essence of "trial by jury" is the right of each juror to weigh the evidence for himself, and in the exercise of his own reasoning faculties, determine whether or not the facts involved in the issue are proved. And if this right is taken from the juror — if he is not allowed to weigh the evidence for himself — is not allowed to use his own reasoning faculties, but, on the contrary, is obliged to accept the evidence at the weight which others have affixed to it, and to return and affirm a verdict . . . of the truth of which he has reasonable doubts — then, very clearly, the substance, the very essence, of "trial by jury" will be taken away and its form only will remain.

*Lapointe*, 81 N.H. at 230-31 (quotation omitted).

Second, the language of this statutory sentence unconstitutionally shifts the burden of proof, or at least places a burden of compulsory production, upon a defendant who, "[i]f he pleaded not guilty, . . . could not be required to do or say anything more." *Id.* at 235 (quotation and comma omitted); *see* N.H. CONST., pt. I, art. 15. The legislature cannot directly enact a statute requiring a defendant to furnish evidence at a criminal prosecution. N.H.

CONST., pt. I, art. 15. Thus, it follows that the legislature cannot do so indirectly by stating that proof of "fact X" will be *prima facie* evidence of "fact Y," because that would require the defendant to rebut "fact Y" or to accept it as a proven fact. *See Lapointe*, 81 N.H. at 235.

A criminal defendant has the right to require the State to present sufficient evidence to prove each element of the offense beyond a reasonable doubt. *See id.* at 237. Under another statute we might construe language similar to the final sentence of this statute, providing that "fact X" is *prima facie* evidence of "fact Y," as meaning only "evidence to be considered by the jury." *Id.* at 239. We cannot do so in this case because of the vast number of Rules of the Road that could potentially constitute "fact X" without having any causal connection to "fact Y." *Cf. id.* at 239. We hold, therefore, that the final sentence of RSA 265:79-a is both an invalid legislative enactment and unconstitutional as written.

While such a holding could entirely invalidate this statute, in this case it does not. *Cf. Carson v. Maurer*, 120 N.H. 925, 945 (1980) (allowing only invalid portion of statute to be stricken if remainder of statute and purpose of statute can be preserved). The legislative intent apparent in this statute's history seeks only to fill in the gaps in this statutory scheme for charging and punishment purposes. These purposes can be completely preserved merely by striking down the last sentence of the statute for its invalid attempt to affect the evidence and burdens of proof at trial.

In sum, we conclude that the vehicular assault statute is valid as enacted and requires proof of a mental state of criminal negligence to sustain a conviction. *See* RSA 626:2, II(d). The statute's final sentence must be stricken, however, because it removes the evidence weighing function from the jury and shifts the burdens of proof and production to the defendant. *See Lapointe*, 81 N.H. at 238-39.

For the foregoing reasons, we reverse the decision of the Derry District Court, and we remand both cases for proceedings consistent with this opinion.

*No. 2001-607 reversed and remanded;*

*No. 2002-143 remanded.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.