Belknap
No. 2009-327

THE STATE OF NEW HAMPSHIRE

v.

GRAHAM GIBSON

Argued: February 11, 2010
Opinion Issued: June 30, 2010

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Gregory W. Swope, PLLC*, of Concord (*Gregory W. Swope* on the brief and orally), for the defendant.

CONBOY, J. The defendant, Graham Gibson, appeals an order issued by the Superior Court (*Mohl*, J.) requiring him to pay restitution. We reverse in part, vacate in part, and remand.

The record on appeal reveals the following. The defendant was originally charged with ninety-seven counts of felonious sexual assault, RSA 632-A:3, or aggravated felonious sexual assault, RSA 632-A:2, involving his two daughters, M.G. and K.G. All but eight counts were dismissed prior to trial

after the Trial Court (*Perkins*, J.) concluded that the victims' recovered memories were unreliable and therefore inadmissible as evidence at trial. *See State v. Hungerford*, 142 N.H. 110 (1997). The defendant was convicted of two counts of felonious sexual assault occurring in 1986-1987, one involving sexual contact with M.G. and the other involving sexual contact with K.G. On February 10, 2005, as part of his sentences, the defendant was ordered to make restitution in an amount to be determined at a later date.

In February 2006, the trial court held a restitution hearing. The State presented a bill from Sari Kutch, LCSW, for counseling services provided to K.G., along with her estimate of the cost for future counseling for both victims. The State represented that M.G. had not yet engaged in counseling because of the uncertainty of payment. The trial court ordered the defendant to place $17,125 for K.G., and $18,750 for M.G., in trust to be held by his attorney, and ordered that records supporting the invoice from Kutch be submitted for *in camera* review.

Following the submission of additional records, the Trial Court (*Mohl*, J.) ruled in October 2008 that it was not possible to apportion the counseling required for K.G. between counseling necessitated by the abuse resulting in the defendant's conviction and other similar alleged abuse perpetrated by the defendant upon K.G. for which he was not convicted. The court ordered payment from the funds held in trust of $4,425 to K.G. and $11,200 to Kutch. The former amount represents what K.G. actually paid Kutch for counseling. Kutch provided some counseling sessions to K.G. at a reduced rate or at no cost when K.G. could not afford it. The latter amount appears to represent the difference between what Kutch was actually paid for K.G.'s sessions and the amount she would have been paid had she been paid at her regular rate. Finally, the court declined to reduce the remaining funds being held in trust despite the fact that M.G. had still not sought counseling. The court concluded: "That may change and, moreover, additional funds may be required for [K.G.]"

The defendant appealed, arguing that the trial court erred by ordering: (1) payment of restitution directly to Kutch; (2) payment of restitution for mental health services; (3) payment of restitution for services not proven to be the direct result of the conduct for which the defendant was convicted; and (4) that funds remain in escrow for the benefit of M.G.

As a preliminary matter, we address which version of the restitution statute applies to this case. The defendant contends that the version in effect in 1986-1987, when the crimes were committed, must apply. The State responds that the issue is irrelevant because the result is the same under either version, but that the trial court properly applied the current

version of the statute. We agree with the State that the result in this case is the same under either version. Accordingly, we need not decide which applies.

The first three issues on appeal require us to construe the restitution statute.

> The interpretation of a statute is a question of law, which we review *de novo*. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Further, we interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language it did not see fit to include. Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation.

*State v. Kousounadis*, 159 N.H. 413, 423 (2009) (quotations and citations omitted).

The version of RSA 651:62 in effect in 1986-1987 defines "restitution" as: "moneys, compensation, work or service to be reimbursed by the offender to the victim who suffers personal injury, death or economic loss under this subdivision." Laws 1981, 329:2. " 'Victim' means a person or claimant who suffers personal injury, death or economic loss as a direct result of an offender's criminal conduct or of the good faith effort of any person attempting to prevent or preventing the criminal conduct." *Id.* And "economic loss" is defined as "pecuniary detriment suffered by the victim, including the value of damaged, destroyed or lost property, reasonable medical costs and loss of employment income." *Id.*

RSA 651:62 was amended in 1996 to provide that "restitution" means "money or service provided by the offender to compensate a victim for economic loss, or to compensate any collateral source subrogated to the rights of the victim, which indemnifies a victim for economic loss under this subdivision." RSA 651:62, V (2007). "Victim" is now defined as "a person or claimant who suffers economic loss as a result of an offender's criminal conduct or the good faith effort of any person attempting to prevent or preventing the criminal conduct." RSA 651:62, VI (2007). And "economic loss" is defined, in relevant part, as:

> out-of-pocket losses or other expenses incurred as a direct result of a criminal offense, including: (a) Reasonable charges incurred

for reasonably needed products, services and accommodations, including but not limited to charges for medical and dental care, rehabilitation, and other remedial treatment and care including mental health services for the victim . . . .

RSA 651:62, III (2007).

The defendant first argues that the trial court erred in ordering the payment of restitution directly to Kutch, as she is neither a victim nor a collateral source subrogated to the rights of a victim. We agree.

The prior version of the restitution statute defined "victim" as a person who suffers economic loss as a direct result of the offender's criminal conduct. We agree with the defendant that Kutch did not suffer any economic loss as a "direct result" of the defendant's criminal conduct. *Cf. State v. Springer*, 133 N.H. 223 (1990) (holding that insurer that compensated its insured for consequences of a crime did not suffer loss as a "direct result" of criminal conduct and is not a "victim"). The State concedes in its brief that Kutch is not a "collateral source subrogated to the rights of the victim, which indemnifies a victim for economic loss." RSA 651:62, V (2007). Thus, the amendment to the statute does not render Kutch a "victim." *Cf. State v. McCarthy*, 150 N.H. 389 (2003) (where defendant stabbed minor whose mother then lost wages during time she cared for her injured son, mother was not "victim" entitled to restitution for lost wages). Therefore, the trial court erred by ordering the payment of restitution directly to Kutch, and we reverse that portion of its order.

We note that on the record before us there is no finding by the trial court that K.G. was obligated to pay Kutch for the services she provided beyond the $4,425 that K.G. had already paid to Kutch (and which amount the defendant was ordered to pay as restitution to K.G.). Therefore, we need not address whether a trial court could award restitution *to the victim* for expenses actually incurred by the victim, but not yet paid, as a direct result of a criminal offense, either with or without a condition requiring the victim to use the restitution to pay such expenses.

Next, the defendant argues that the restitution statute in effect in 1986-1987 did not authorize the court to order payment of restitution for mental health services. The defendant contends that by amending the definition of "economic loss" in 1996 to specifically include "mental health services," the legislature expanded the definition to provide for such restitution for the first time. We disagree.

We will assume, without deciding, that this issue was preserved for our review. The prior version of the restitution statute defined "economic loss" as "pecuniary detriment suffered by the victim, including the value of

damaged, destroyed or lost property, reasonable medical costs and loss of employment income." Laws 1981, 329:2. The use of the term "including" indicates that the examples that follow it are intended to be non-exclusive. *See Conservation Law Found. v. N.H. Wetlands Council*, 150 N.H. 1, 5-6 (2003); BLACK'S LAW DICTIONARY 831 (9th ed. 2009). While use of the term "including" may limit the applicability of the general term "pecuniary detriment" to the *types* of economic losses particularized therein, *see Conservation Law Found.*, 150 N.H. at 6, we conclude that mental health services, such as the counseling services at issue in this case, are sufficiently similar to "medical costs" to fall within the scope of the definition. To the extent that the prior statute was ambiguous with respect to whether mental health services were included, we believe that the 1996 amendment that first specified "mental health services" is more properly viewed as an attempt to resolve any ambiguity rather than as a change in legal rights. *See Snyder v. N.H. Savings Bank*, 134 N.H. 32, 36 (1991).

▆▆▆▆ Next, the defendant argues that the trial court awarded restitution for losses that were not incurred as a direct result of his criminal conduct. Both the prior version and the current version of the restitution statute tie restitution to losses incurred "as a direct result" of the offender's criminal conduct; that is, the conduct for which he was convicted. *See Kousounadis*, 159 N.H. at 423 (statutory language is construed according to its plain and ordinary meaning).

> Determining the appropriate restitution amount is within the discretion of the trial court. If the factual basis for restitution is disputed, however, the State must prove by a preponderance of the evidence that the loss or damage is causally connected to the offense and bears a significant relationship to the offense. Where several factors contribute to the loss suffered by the victim, the court should apportion the costs so that the ordered restitution reasonably represents the amount of the loss the victim sustained as a result of the offense. In order to determine the appropriate apportionment, the court may require the benefit of expert testimony. *Cf. Com. v. Balisteri*, 478 A.2d 5, 9-10 (Pa. Super. Ct. 1984) (where other factors may have contributed to need for psychiatric care, appellate court unable to review propriety of apportioning restitution without benefit of expert testimony).

*State v. Eno*, 143 N.H. 465, 470-71 (1999) (quotations and citations omitted).

▆▆▆ In this case, the trial court indicated that it was not possible to apportion the counseling required for K.G. between what was necessitated by the abuse for which the defendant was convicted and what was

necessitated by the other alleged abuse perpetrated by the defendant upon K.G. The court then ordered restitution covering all counseling costs. This ruling fails to account for the burden of proof, which requires the State to prove that the loss is causally connected to the offense and bears a significant relationship to the offense. *Id.*; *see State v. Schwartz*, 160 N.H. 68, 71 (2010). At the very least, the State must prove that the conduct for which the defendant was convicted was a substantial factor in producing the injury that required the treatment. *Cf. Indep. Mechanical Contractors v. Gordon T. Burke & Sons*, 138 N.H. 110, 115 (1993) (noting that many factors may unite to produce the result; in order to establish liability, one must prove that defendant's breach was a substantial factor in causing the injury). No such finding was made by the trial court in this case. Therefore, we vacate the order awarding funds directly to K.G. and remand for further proceedings consistent with this opinion.

The State contends that because the defendant successfully moved to dismiss eighty-nine counts of felonious sexual assault and aggravated felonious sexual assault on the ground that the victims' recovered memories were unreliable, he is judicially estopped from arguing that the effects of the dismissed counts played any role in the victims' need for counseling. Alternatively, the State relies upon the invited error doctrine, arguing that by persuading the trial court that the evidence supporting the dismissed assaults was unreliable, the defendant cannot complain when the trial court ignored that evidence in ordering restitution.

█ We are not persuaded. The State conflates the defendant's position that the victims' recovered memories were inadmissible as evidence with the position that the underlying alleged events *in fact* did not occur. We see no contradiction between the defendant's evidentiary arguments underlying his motion to dismiss and his later position that the State bears the burden of proving by a preponderance of the evidence that the victim's loss or damage is causally connected to the offense for which the defendant was convicted. *See Cohoon v. IDM Software*, 153 N.H. 1, 4 (2005) (judicial estoppel prevents party from prevailing in one phase of a case on an argument and then relying on contradictory argument to prevail in another phase). Nor do we see how the defendant somehow led the trial court into error. *See State v. Goodale*, 144 N.H. 224, 227 (1999) (under "invited error" doctrine, party may not avail himself of error into which he has led the trial court).

Finally, the defendant argues that the trial court erred by not releasing to him the funds being held in trust for M.G. We note that the defendant did not argue to the trial court, and does not argue on appeal, that the trial court could not order that restitution funds be held in trust for an indefinite

period of time, or that the funds held in trust for M.G. be used for restitution to K.G. Those issues, therefore, are not before us, and we express no opinion thereon. Instead, the defendant argues that the circumstances that warranted the imposition of restitution as to M.G., which prompted the trial court in March 2006 to order the placement of $18,750 in trust for her future counseling needs, had changed, and that the court, therefore, erred by not releasing those funds. *See* RSA 651:66 (2007). The State contends that Kutch provided an assessment of M.G.'s future treatment needs to the trial court that supports its order.

█ It appears that the amount that the trial court ordered to remain in trust for future counseling for M.G. may have been influenced by its erroneous ruling regarding the apportionment of counseling costs. This seems particularly likely given the trial court's reasoning that the funds held in trust might be required for future counseling costs incurred by K.G. Accordingly, we vacate this ruling and remand for further proceedings consistent with this opinion.

> *Reversed in part; vacated in part; and remanded.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.