Grafton
No. 2013-776

THE STATE OF NEW HAMPSHIRE

v.

JASON J. MCGILL

Submitted: January 7, 2015
Opinion Issued: February 12, 2015

*Joseph A. Foster*, attorney general (*Lisa Wolford*, assistant attorney general, on the brief), for the State.

*Thomas Barnard*, senior assistant appellate defender, of Concord, on the brief, for the defendant.

HICKS, J. The defendant, Jason J. McGill, appeals his conviction by a jury for felony delivery of an unlawful article to a prisoner. *See* RSA 30-B:9, :10 (2000). On appeal, he argues that the Superior Court (*Vaughan,* J.) erroneously instructed the jury that to convict, it had to find that he acted "knowingly." He contends that the proper *mens rea* for the crime was "purposely." We reverse and remand.

The record establishes the following facts. The defendant was charged with knowingly delivering to an inmate at Grafton County House of Corrections an article that was unlawful for the defendant to possess, namely, a pill containing a certain prescription drug. Although the defendant is also an inmate at the same facility, the indictment did not so allege. The defendant moved to dismiss the indictment on the ground that it failed to allege that he acted with the intent that the inmate receive or obtain the article, as required by RSA 30-B:9. The trial court denied his motion.

Thereafter, the court distributed a draft jury instruction to the parties, which stated that, to convict the defendant of the charged offense, the State had to prove the following: (1) the defendant had in his possession a prescription drug that was contrary to the prison's rules and regulations; (2) he "acted purposely, that is, with the intent to deliver said article" to a prisoner; (3) he "acted purposely, that is, with the intent that [the]

prisoner . . . shall receive or retain such article"; and (4) he "did so without the knowledge or permission of the Superintendent of the Grafton County House of Corrections."

The State objected to the instruction, arguing that the *mens rea* for the charged offense was not "purposely," as set forth in the instructions, but was "knowingly." The State argued that when the charge alleges delivery of a prohibited article from one inmate to another, the mental state is "simply knowingly," because "the purpose is self-evident." The State also requested that the word "intent" be eliminated from the instructions and that the phrase "with the intent that a prisoner . . . shall receive or retain said article," RSA 30-B:9, be replaced with "knew that a prisoner shall receive or obtain the article." The trial court revised the jury instruction over the defendant's objection and delivered the following instruction to the jury:

> [T]he Defendant is charged with the crime of delivery of articles prohibited. The definition of this offense has five parts or elements. The State must prove beyond a reasonable doubt each of the five elements of the crime.

> Thus, the State must prove 1) the Defendant had in his possession an article contrary to the rules and regulations established by the Superintendent of the Grafton County House of Correction; 2) the article was a prescription drug for which he did not have a valid prescription; 3) the Defendant acted to deliver the article to a prisoner confined at the Grafton County House of Correction; 4) the Defendant did so without the knowledge or permission of the Superintendent of the Grafton County House of Correction; and 5) the Defendant acted knowingly.

> Now part of the definition of the crime of delivery of articles in this case is that the Defendant acted knowingly. Th[is] means the State must prove that he was aware that his acts would cause the prohibited result. The State does not have to prove that he specifically intended or desired a particular result. What the State must prove is that the Defendant was aware or kn[e]w his conduct would cause the result.

> Now, as I've told you, to prove the Defendant has committed a crime, the State must prove first, that the Defendant did certain acts, and second, that the Defendant acted with a certain intent.

> In this case, as I've just indicated to you, the State must prove the Defendant committed certain acts and he did so knowingly. Whether the Defendant acted knowingly is a question of fact for you to decide.

> Keep in mind, there's often no direct evidence of intent because there's no way of examining the operation of a person's mind.
>
> You should consider all the facts and circumstances in evidence in deciding whether or not the State has proven the Defendant acted knowingly.

The jury found the defendant guilty, and this appeal followed.

The sole issue on appeal is whether the trial court correctly instructed the jury as to the *mens rea* for the charged offense. The defendant argues that the correct *mens rea* is "purposely," and the State contends that it is "knowingly."

■ "The purpose of a trial court's jury instructions is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." *State v. Gribble*, 165 N.H. 1, 29 (2013). "When reviewing jury instructions, we determine whether the instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law arising in the case." *Id.* The scope and wording of jury instructions is generally within the sound discretion of the trial court, and any allegations of error will be evaluated by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case. *Id.* We review the trial court's decisions on these matters for an unsustainable exercise of discretion. *Id.*

To determine the correct *mens rea* for the charged offense, we must interpret RSA 30-B:9. The construction of RSA 30-B:9 presents a question of law, which we review *de novo. See State v. Addison*, 160 N.H. 732, 754 (2010). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Id.* When interpreting statutes, we look to the plain language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* We interpret legislative intent from the statute as written and will neither consider what the legislature might have said nor add language it did not see fit to include. *Id.* Additionally, we interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.*

RSA 30-B:9 provides:

> No person shall deliver or procure to be delivered or have in his possession with intent to deliver to a prisoner confined in a county correctional facility, or deposit or conceal in any building or upon any land appurtenant thereto, any article with intent that a prisoner shall receive or obtain it, or receive from a prisoner any article with intent to convey it out of said county correctional

facility without the knowledge of the superintendent of the county department of corrections; nor shall any prisoner deliver or procure to be delivered or have in his possession, or deposit or conceal in any building or land appurtenant thereto, or convey out of any county correctional facility, any article without the knowledge of the superintendent of the county department of corrections.

Although the defendant is a prison inmate, he was not charged as such. Moreover, the defendant was charged with delivering an article to a prisoner, not with receiving an article from one. Accordingly, it is the first part of RSA 30-B:9 that is at issue in this case — "No person shall deliver or procure to be delivered or have in his possession with intent to deliver to a prisoner confined in a county correctional facility, or deposit or conceal in any building or upon any land appurtenant thereto, any article with intent that a prisoner shall receive or obtain it." RSA 30-B:9.

The defendant argues that the phrase "with intent that a prisoner shall receive or obtain it" modifies all of the means of committing the crime as set forth in the first part of the statute (delivering, procuring to be delivered, having in possession with intent to deliver, depositing or concealing in any building or upon any land). The defendant correctly observes that the statute uses the word "intent," and "intentionally" is synonymous with "purposely." *See State v. Brewer*, 127 N.H. 799, 800 (1986); *see also State v. Pond*, 132 N.H. 472, 475 (1989) (holding that because felonious sexual assault requires "intentional" touching, the applicable mental state is "purposely"). Thus, the defendant contends, "purposely" is the proper *mens rea* in this case.

The State argues that the phrase "with intent that a prisoner shall receive or obtain it" applies only when the article is delivered to a prisoner indirectly such as "by placing it on the prison grounds or land appurtenant thereto." The State contends that when an article is directly delivered to a prisoner, there is no need to prove the specific intent that the prisoner receive or obtain it. The State contends that "to read the statute as the defendant suggests requires proof of the defendant's specific intent when his or her intent is already apparent from the criminal act itself."

 The State's statutory interpretation is contrary to the plain meaning of the statute's words, read as a whole. As the defendant cogently explains, "[n]o person" and "any article" constitute the subject and object of the sentence, and, as such, they apply to the entire sentence. RSA 30-B:9. The verbs "deliver," "procure to be delivered," "have in his possession with intent to deliver," "deposit," and "conceal" are joined by the disjunctive "or," and, thus, constitute the five variants of the offense. *Id*. The prepositional

clause "with intent that a prisoner shall receive or obtain it" applies to all five statutory variants because it refers to "any article." *Id.*

Although the State asserts that its interpretation is more logical than the defendant's interpretation, we disagree. We find nothing illogical about requiring the State to prove that a defendant, who delivers an article directly to a prisoner, acted with the specific intent that the prisoner receive or obtain the delivered article.

Thus, because the first part of RSA 30-B:9 specifies that a defendant must act with the "intent that a prisoner shall receive or obtain" the delivered article, and because "intentionally" and "purposely" are synonymous terms, *see Brewer*, 127 N.H. at 800, the correct *mens rea* for the charged offense is "purposely." The trial court in this case erred by instructing the jury that the *mens rea* was "knowingly." This error constitutes reversible error because "knowingly" is a lesser mental state than "purposely," *State v. Morabito*, 153 N.H. 302, 306 (2006), and it was under this lesser standard that the defendant was found guilty. We conclude, therefore, that the trial court committed reversible error by interpreting the first part of RSA 30-B:9 to require a *mens rea* of "knowingly."

*Reversed and remanded.*

DALIANIS, C.J., and CONBOY and BASSETT, JJ., concurred; LYNN, J., concurred specially.

LYNN, J., concurring specially. The State has a strong argument that, under RSA 30-B:9 (2000), when a person, such as the defendant before us, is accused of directly delivering a prohibited article to a prisoner, the requisite mental state *should* be knowingly rather than purposely because imposing a specific intent requirement in this circumstance adds little of substance to the culpability of the conduct that the legislature sought to prohibit. However, our task is not to construe the statute as the legislature might have drafted it, but as it actually did. And on that score, the majority's textual analysis of the statute is unassailable. Because the plain language of the statute is clear, we would be justified in looking beyond the text only if reliance on the text alone would produce an absurd or illogical result. Although the conceptual difference between one who acts knowingly and one who acts purposely in a case such as this may be slight, the distinction is not so lacking in substance that it could be properly characterized as absurd or illogical. Therefore, I concur in the majority's decision. If the statute is to be changed in the manner that the State advocates, such change must come from the legislature.