NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2014-0686


THE STATE OF NEW HAMPSHIRE

v.

THE MANDATORY POSTER AGENCY, INC.

Argued: April 22, 2015
Opinion Issued: October 14, 2015


Joseph A. Foster, attorney general (Jesse O'Neill, attorney, on the brief and orally), for the State.

Bernstein Shur, P.A., of Manchester (Edward J. Sackman on the brief and orally), for the defendant.

BASSETT, J. The State appeals an order of the Superior Court (McNamara, J.) dismissing 27 indictments alleging felony-level criminal violations of the New Hampshire Consumer Protection Act (CPA) by the defendant, The Mandatory Poster Agency, Inc. d/b/a Corporate Records Service. See RSA 358-A:6, I (2009). The trial court ruled that the indictments were defective because they alleged that the defendant acted with the mental state of "knowingly," and not "purposely." We affirm.

The following facts are taken from the trial court's order. The defendant is a Michigan-based company that "assists corporations in complying with

regulations associated with the conduct of corporate business by supplying annual corporate consent documents" by way of direct mail. The defendant, listing its address as "75 South Main Street, Unit 7, #502, Concord, New Hampshire, 03301-4865," mailed solicitations to potential customers. This address is "a private mailbox used as a clearinghouse to receive and bundle orders from New Hampshire customers." According to the defendant, as a result of these direct mailings, it made sales in New Hampshire totaling $12,625.

Subsequently, a grand jury indicted the defendant on 27 felony violations of the CPA. The indictments encompass three sets of nine charges, all stemming from the defendant's allegedly deceptive use of the Concord address in 2013. One set of indictments alleges that the defendant's use of the Concord address is "designed . . . to deceive the recipient into the false assumption that th[e] solicitation was sent by a governmental agency." See RSA 358-A:2, II (2009). All indictments allege that, between February and March 2013, the defendant "knowingly" violated various provisions of the CPA. As the trial court noted, if convicted, the defendant faces "potential fines of up to $2,700,000." See RSA 651:2, IV(b) (2007).

The defendant moved to dismiss the indictments, arguing that the charges fail to allege the requisite mental state of "purposely." The State objected, arguing that "knowingly" is the applicable mental state. The trial court agreed with the defendant and dismissed the indictments. This appeal followed.

On appeal, the State argues that the trial court erred when it concluded that, to secure criminal conviction, the State had to prove that a defendant purposely violated the CPA. The State argues that a mental state of "knowingly" is more consistent with the title, policy objectives, and broad applicability of the CPA, as well as the legislative intent. The State also observes that a knowing mental state is in keeping with the mens rea requirements in consumer protection statutes in other jurisdictions. The defendant counters that the statutory scheme taken as a whole, and the fact that the CPA is rooted in common law fraud, supports the trial court's ruling that "purposely" is the correct mental state. Finally, the defendant argues that, in light of the policy considerations underlying the imposition of criminal sanctions for CPA violations, "purposely" is the necessary mental state.

Because this issue requires the interpretation of the CPA, our review is de novo. State v. Gibson, 160 N.H. 445, 448 (2010). In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. Id. We first look to the language of the statute, and, if possible, construe that language according to its plain and ordinary meaning. Id. Further, we interpret legislative intent

2

from the statute as written and will not consider what the legislature might have said or add language it did not see fit to include.  Id.  Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation.  Id.

The CPA states that "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  RSA 358-A:2 (2009) (amended 2014).  But see SPGGC, LLC v. Ayotte, 488 F.3d 525, 536 (1st Cir. 2007) (holding that RSA 358-A:2, XIII is preempted, in part, by federal law).  RSA 358-A:2 also provides a non-exclusive list of conduct deemed to be unfair or deceptive.  See RSA 358-A:2, I-XIV.  "Although the general provision of the CPA is broadly worded, not all conduct in the course of trade or commerce falls within its scope."  State v. Sideris, 157 N.H. 258, 262 (2008).  "An ordinary breach of contract claim, for example, is not a violation of the CPA."  Id.

In addition to both public and private civil remedies, see RSA 358-A:4, :10 (2009), the CPA provides for criminal penalties, stating that "[a]ny person convicted of violating RSA 358-A:2 . . . shall be guilty of a misdemeanor if a natural person, or guilty of a felony if any other person."  RSA 358-A:6, I.  The statute, however, does not specify the mental state that the State must prove in order to obtain a conviction for a criminal violation of the CPA.  See RSA 358-A:2, :6, I.

In New Hampshire, "[a] person is guilty of . . . a felony, or a misdemeanor only if he acts purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense."  RSA 626:2, I (2007).  "A person acts purposely with respect to a material element of an offense when his conscious object is to cause the result or engage in the conduct that comprises the element."  RSA 626:2, II(a) (2007).  In contrast, "[a] person acts knowingly with respect to conduct or to a circumstance that is a material element of an offense when he is aware that his conduct is of such nature or that such circumstances exist."  RSA 626:2, II(b) (2007).

"When a criminal statute does not provide for a specific mental state, we read [the statute] as requiring proof of a culpable mental state which is appropriate in light of the nature of the offense and the policy considerations for punishing the conduct in question."  State v. Rollins-Ercolino, 149 N.H. 336, 338 (2003) (quotation omitted).  "The appropriate culpable mental state will then be applied to all material elements of an offense unless a contrary purpose appears in the language of the statute."  Id.  In making this determination, "we first look to the plain language of the statute to determine legislative intent."  Id. at 339.

The State concedes that the plain language of two of the alleged violations of the CPA require a defendant to act "with intent," see RSA 358-A:2,

3

IX, X, and that "with intent" is synonymous with the mental state of "purposely." See State v. McGill, 167 N.H. __, __, 112 A.3d 574, 578 (2015). The State contends that, in those sections of the CPA that do not require that a defendant act "with intent," the mental state for a criminal violation should be "knowingly," because we should not add words the legislature did not see fit to include. We observe that another reasonable interpretation would be to apply the "intent" requirement to all criminal violations of the CPA, while requiring proof of "intent" only for certain civil violations.

"When, as here, the statutory language gives us no indication of the legislature's intent and is subject to more than one reasonable interpretation, we must look further into the nature of the offense and the policy considerations for punishing the conduct in question." Rollins-Ercolino, 149 N.H. at 339 (citation and quotation omitted). "[W]hen a statute defining an offense is silent with respect to the mens rea, we will look to the common law origins of the crime . . . ." State v. Goodwin, 140 N.H. 672, 674 (1996). However, as both parties acknowledge, the CPA did not exist at common law. "Thus, we begin by looking at the legislative history of this and similar statutes to determine the legislature's intent." Rollins-Ercolino, 149 N.H. at 339. "[W]e will also consider other indicia such as the title of the statute, the statute in the context of its overall statutory scheme and the intent behind similar statutory provisions." Id. (citations omitted).

Turning first to the legislative history of the CPA, the State argues that it supports a knowing mental state. The State cites another section of the CPA, RSA 358-A:6, III (2009), which states that "[a]ny person who subverts the intent and purposes of this chapter by filing false, misleading, or substantially inaccurate statements with the attorney general for the purposes of effecting prosecution under this chapter shall be guilty of a violation." The State notes that this section of the proposed legislation originally stated that "[a]ny person who knowingly and willingly subverts the intent and purposes of this chapter," but, prior to its enactment in 1970, it was amended to remove the phrase "knowingly and willingly." N.H.S. Jour. 223 (1970). The State cites the remarks of Senator Alf Jacobson, who stated that the Executive Departments and Administration Committee recommended the removal to avoid "get[ting] into the 'knowingly' matter which would be a very difficult matter to prove at law." Id. The State argues that, in light of this change, requiring the more rigorous mental state of "purposely" for violations of RSA 358-A:2 would contravene legislative intent. We disagree.

RSA 358-A:2 (unfair and deceptive acts in trade or commerce) punishes different conduct than does RSA 358-A:6, III (filing false, misleading, or inaccurate statements). Thus, the removal of the phrase "knowingly and willingly" from the proposed legislation that resulted in RSA 358-A:6, III does little to illuminate the legislature's intent with regard to the mental state

4

needed to prove a criminal violation of RSA 358-A:2. We are not persuaded by the State's argument that the legislature, by removing the phrase "knowingly and willingly" from RSA 358-A:6, III, intended us to read "knowingly" into a different section of the statute. Moreover, RSA 358-A:6, III does incorporate a mental state and that mental state is "purposely" — the false or misleading statement submitted to the attorney general must be done "for the purpose[] of effecting [a] prosecution."

The State also asserts that the policy considerations underlying the CPA, as demonstrated by the legislative history, support a knowing mental state because they show that "the legislature intended the Consumer Protection Act to be a broadly applicable tool to effectively protect consumers in New Hampshire." Although there is no doubt that the purpose of the statute as a whole is to protect consumers, it does not logically follow that the legislature intended a knowing mental state to apply to criminal prosecutions under the CPA.

We next examine "the statute in the context of its overall statutory scheme and the intent behind similar statutory provisions." Rollins-Ercolino, 149 N.H. at 339. Viewed as a whole, the CPA provides for three types of sanctions for its violation. First, the State may bring a civil enforcement action, and a court may impose "penalties up to $10,000 for each violation of this chapter." RSA 358-A:4, III(b). Second, as previously noted, the State may seek criminal penalties under RSA 358-A:6. Third, the CPA creates a private right of action for damages and equitable relief. RSA 358-A:10, I. A prevailing plaintiff is entitled to compensation "in the amount of actual damages or $1,000, whichever is greater" and an award of reasonable attorney's fees and costs. Id. Further, if a plaintiff demonstrates that the violation was "willful or knowing," the court "shall award as much as 3 times, but not less than 2 times, such amount." Id.

Additionally, we note that criminal conviction under the CPA would expose the defendant to an award of at least twice the amount of actual damages in a subsequent private civil action. See Stewart v. Bader, 154 N.H. 75, 81 (2006) (observing that "as a general rule . . . a judgment in favor of the prosecuting authority in an earlier prosecution is preclusive in favor of a third person in a later civil action against the defendant in the criminal prosecution" (quotation omitted)). Further, a corporate defendant that was successfully prosecuted and subject to the criminal sanction of up to $100,000 for each violation of the CPA, see RSA 651:2, IV(b), would face double or treble damages in a private civil action. The legislature certainly could have written a statute that provided for such severe and multiple penalties for an act committed with the lesser mental state of "knowingly." But considering the statutory scheme before us, and absent a clear expression of such an intent, "[w]e decline to construe the statute so as to lead to so harsh a result." Franklin Lodge of Elks

5

v. Marcoux, 147 N.H. 95, 97 (2001).

The State also argues that, when RSA 358-A:6, I, is considered in conjunction with the statutory exemptions contained in RSA 358-A:3 (2009), the absurdity of requiring the mental state of "purposely" is evident. Specifically, the State points to the exemption from the provisions of the CPA for "[p]ublishers, broadcasters, printers, or other persons engaged in the dissemination of information or reproduction of printed or pictorial matter who publish, broadcast, or reproduce material without knowledge of its deceptive character." RSA 358-A:3, IV (emphasis added). The State argues that, if we interpret the statute to require a purposeful mental state, a publisher of material with knowledge of its deceptive character, would not be subject to criminal liability under the CPA. However, exemption for unknowing conduct does not, in and of itself, support an inference that knowing conduct must therefore result in criminal liability. Further, knowing deceitful conduct does not go unsanctioned under the CPA. The State, as well as private parties, has the ability to seek civil remedies for such conduct.

Finally, the State argues that a mental state of "purposely" "would not be consistent with the prevailing authority in other states." However, although "all fifty states have adopted consumer protection legislation," Plath v. Schonrock, 64 P.3d 984, 989 (Mont. 2003), the State identifies only nine states in which violators are subject to criminal penalties, six of which specifically require a mental state of "knowingly" or one that is akin to "knowingly." As the State acknowledges, the three remaining states do not expressly set forth a culpable mental state in their consumer protection statutes. Significantly, in those three states, we are aware of no court that has held — as the State urges this court to so hold — that the requisite mental state is "knowingly." Recognizing that the wording of each state's consumer protection law is different, we decline to accept the State's invitation to require the less demanding mental state of "knowingly" for criminal prosecutions.

Accordingly, we hold that, in order to secure a criminal conviction under RSA 358-A:6, I, the State must prove that a defendant acted with the mental state of "purposely." "Of course, if the legislature disagrees with our construction, it is free to amend the statute as it sees fit." Zorn v. Demetri, 158 N.H. 437, 441 (2009).

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.

6