NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

7th Circuit Court-Rochester District Division
No. 2021-0087

THE STATE OF NEW HAMPSHIRE

v.

KEVIN BUTLER

Argued: May 10, 2022
Opinion Issued: September 28, 2022

John M. Formella, attorney general, and Anthony Galdieri, solicitor general (Elizabeth C. Woodcock, senior assistant attorney general, on the brief and orally), for the State.

Champions Law, of Portsmouth (Jared Bedrick, on the brief and orally), for the defendant.

HANTZ MARCONI, J.  The defendant, Kevin Butler, appeals his conviction after a bench trial in the Circuit Court (Pendleton, J.) on two counts of animal cruelty.  See RSA 644:8-aa (2016); RSA 644:8, III (2016).  He asserts that the evidence was insufficient to support a finding of criminal negligence beyond a reasonable doubt.  We affirm.

Based on the record before us, the trial court could have found the following facts. On July 20, 2020, one of the defendant's neighbors was leaving her apartment to run errands when she noticed a dog inside a parked Honda Civic. After 45 minutes to an hour, the neighbor returned and noticed that the dog remained in the vehicle. The dog appeared to be in distress and was "scratching at the windows and the door." The temperature was greater than 90 degrees outside and the neighbor believed that the "dog shouldn't have been in the car because it was that hot with all the windows . . . closed." She was "afraid for the dog," so she called the police.

An animal control officer for the City of Rochester responded to the call. When the officer arrived she observed "a dog in a vehicle up against the driver's side door," and while she was parking "the dog slid[] off the seat and underneath the steering wheel." When the animal control officer opened the unlocked car door, she observed that "it was hotter inside the car than outside." At this point, the animal control officer observed that the dog was "panting heavily and unaware." The officer picked up the dog and secured it inside her truck, which was air-conditioned. Once inside the officer's truck, the dog remained "unresponsive" and was "panting heavily." The animal control officer then took the dog to a veterinary clinic in Rochester.

At the clinic, the veterinarian observed that the dog was "[o]bviously, distressed and in shock." The veterinarian took the dog's temperature, which was over 105 degrees. She immediately began treating the dog "with cold wash cloths and wraps around the feet and body." In addition, she "put in an IV catheter so that [the providers] could start running fluids," "[t]ook some blood [to] assess if there was any current organ damage," and "gave some intravenous valium because [the providers] did note that there was some possible focal seizure activity occurring." The veterinarian continued treating the dog for around a half an hour, until she "got the temperature down to 103," after which the dog was transferred to a veterinary hospital to receive 24-hour care.

After the animal control officer had transported the dog to the veterinary clinic for treatment, a Rochester police officer arrived on scene to investigate. The officer observed that it was around 92 degrees outside and that the car was parked in "direct sunlight" with "nothing that could provide it shade." Thereafter, the officer made contact with the registered owner of the vehicle, the defendant in this case. He asked the defendant "where his dog was," to which the defendant responded "oh, sh*t" and called to his son, who responded, "I don't know." The defendant then informed the officer that "the dog might still be in the car."

The officer and the defendant went down to the defendant's vehicle where the officer pointed out damage to the car caused by the dog scratching and biting at the interior. The defendant informed the officer that he was not concerned about the damage, "he was concerned about his dog." At that point, the officer asked the defendant what happened. The defendant told the officer that he had "been out on some errands" and "[h]is arms were full[,] so [he] asked his 8-year-old son . . . to bring the dog in." The defendant also confirmed with the officer that the dog had been in the vehicle "[a]pproximately an hour."

At trial, the defendant was the sole witness for the defense. He testified that the weather on July 30, 2020 "was very hot outside." That morning, before going to the store, he "pre-started [his] car to let the air conditioner cool off the inside" and "once [he] determined that it was cool enough," he put the dog in the car. When he returned from running errands, "[his] hands were full," so he asked his son to get the dog out of the car. He testified that the dog would frequently ride in the car with him and his children, and that it was his elder son's responsibility to get the dog "in and out of the car on most days." The defendant testified that, after asking his son to let the dog out of the car, he went upstairs to put his groceries away, when he was distracted by his younger son. He did not observe his elder son remove the dog from the vehicle. After calming his younger son, he received a phone call that he "had been waiting almost six months" to receive. He took the call and "stepped into the bedroom . . . and [he] closed the door." About 25 minutes into the phone call, the defendant testified that he heard his elder son come into the house and "assumed that he had . . . brought the dog with him." After he concluded the phone call, he went into his living room, when he heard the police at his door. When the police asked him where his dog was, the defendant testified that he said "oh, sh*t" and asked his son where the dog was. When his son responded that he did not know, the defendant realized that the dog must still be in the car. The following day, the defendant was arrested and charged with one count of cruelty to animals pursuant to RSA 644:8-aa and one count of cruelty to animals under RSA 644:8, III.

II

On appeal, the defendant asserts that the evidence was insufficient to establish the requisite mens rea of criminal negligence for both charges. All other elements are uncontested.

To prevail upon a challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, viewing all of the evidence and all of the reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. State v. Cable, 168 N.H. 673, 677 (2016). In such a challenge, we objectively review the record

3

to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. Id.

The State charged the defendant under both RSA 644:8, III(a), which states, "[a] person is guilty of a misdemeanor. . . who: (a) [w]ithout lawful authority negligently deprives or causes to be deprived any animal in his possession or custody necessary care, sustenance or shelter," and RSA 644:8-aa, which states, "[i]t shall be cruelty to confine an animal in a motor vehicle . . . in which the temperature is either so high or so low as to cause serious harm to the animal." The mens rea that the State is required to prove for a misdemeanor charge of animal cruelty under RSA 644:8, III is criminal negligence. Although RSA 644:8-aa is silent as to mens rea, the parties agree that the appropriate mens rea for a misdemeanor conviction under the statute is also criminal negligence. We, too, agree. When a criminal statute does not provide for a specific mental state, we read the statute as requiring proof of a culpable mental state that is appropriate in light of the nature of the offense and the policy considerations for punishing the conduct in question. See State v. Mandatory Poster Agency, Inc., 168 N.H. 287, 291 (2015); see also RSA 626:2, I (2016) ("A person is guilty of . . . a misdemeanor only if he acts purposely, knowingly, recklessly or negligently, as the law may require with respect to each material element of the offense."). Given that the mens rea established for similar forms of animal cruelty convictions in RSA 644:8, III(a)-(h) requires the State to prove criminal negligence, and given that the sentencing scheme for both misdemeanor convictions is identical, see RSA 644:8-aa, II ("Any person in violation of this section shall be guilty of a misdemeanor as set forth in RSA 644:8."), we conclude that RSA 644:8-aa likewise requires the State to prove criminal negligence.

In order to establish criminal negligence, the State must prove that the defendant "fail[ed] to become aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct," and "[t]he risk must be of such a nature and degree that his failure to become aware of it constitutes a gross deviation from the conduct that a reasonable person would observe in the situation." RSA 626:2, II(d). We have held that a person charged with criminal negligence may not be convicted on evidence that establishes only ordinary negligence. State v. Littlefield, 152 N.H. 331, 350 (2005). The carelessness required for criminal negligence is appreciably more serious than that for ordinary civil negligence. Id. at 351. The risk involved must have been substantial and unjustifiable, and the failure to perceive that risk must have been a gross deviation from reasonable care. Id. Whether the defendant failed to become aware of a substantial and unjustifiable risk is determined by an objective test, not by reference to the defendant's subjective perception. Id.

4

Here, the record supports the trial court's conclusion that the defendant failed to become aware of a substantial and unjustifiable risk that the dog would overheat in the car and that his failure to perceive this risk constituted a gross deviation from reasonable care. First, the record supports the conclusion that the risk to the dog was substantial and unjustifiable. The weather that day was in excess of 90 degrees. The car was parked in direct sunlight with no shade and the windows up. The interior of the car was much hotter than the exterior, and the dog was left in the vehicle for around an hour. This evidence established that there was a substantial and unjustifiable risk that the dog would dangerously overheat if left in the vehicle. See id.

Indeed, the record reflects that the defendant himself was aware of the risk when he testified that, prior to putting the dog in the car, he noticed that the weather was "very hot outside." He demonstrated that he was aware the heat could be dangerous for the dog by taking steps to cool down his vehicle and waiting until the car was "was cool enough" before putting the dog in the car.

Next, the record supports the conclusion that the defendant's failure to become aware of the substantial and unjustifiable risk constituted a gross deviation from reasonable care. Id. The defendant testified that he failed to become aware that the dog remained in the vehicle because he asked his 8-year-old son to get the dog out of the car, which the 8-year-old had reliably done in the past, became distracted by his younger son, and took a phone call he had been expecting for months. Even if the trial court were to have credited the defendant's testimony that his 8-year-old had reliably let the dog out of the vehicle over the prior eight months, it could have reasonably concluded that failure to supervise the 8-year-old under these circumstances — i.e., a known, acute threat to the health and safety of the dog — constituted a gross deviation from reasonable care. Based on the record before us, and viewing the evidence in the light most favorable to the State, we cannot conclude that no rational trier of fact could have come to the same conclusion. See Cable, 168 N.H. at 677.

Before concluding, we note that the defendant relies on State v. Shepard, 158 N.H. 743 (2009), to support his position that the defendant's "mere inattention" was not sufficient to establish criminal negligence. Even assuming, without deciding, that Shepard stands for the proposition that "mere inattention" in failing to become aware of a substantial and unjustifiable risk is not sufficient to establish criminal negligence, the record does not support a conclusion that the defendant was merely inattentive. Unlike the defendant in Shepard, who "strayed over the yellow line for approximately two seconds," Shepard, 158 N.H. at 745, the defendant in this case failed to become aware of the substantial and unjustifiable risk to the dog for an hour — only learning of the incident when confronted by the police after the fact. The defendant was

5

not merely inattentive, but rather created the risk to the dog by entrusting its care to an 8-year-old and failing to confirm its removal from the car.  As stated above, a rational trier of fact could have concluded that this reliance was a gross deviation from reasonable care under the circumstances, and, therefore, does not constitute "mere inattention."  For this reason, we find the defendant's arguments on this point unpersuasive.

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred.