NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court - Nashua District Division
No. 2014-281


THE STATE OF NEW HAMPSHIRE

v.

LOUISE E. PINAULT

Submitted: April 9, 2015
Opinion Issued: July 15, 2015


Joseph A. Foster, attorney general (Stacey R. Kaelin, assistant attorney general, on the brief), for the State.


Bookman & Al-Marayati, of Melrose, Massachusetts (Ghazi D. Al-Marayati on the brief), for the defendant.


LYNN, J. The defendant, Louise E. Pinault, appeals her conviction, following a bench trial before the Circuit Court (Bamberger, J.), on one misdemeanor count of conduct after an accident, see RSA 264:25, I (2014), and the trial court's order that she pay restitution for property damage, see RSA 651:63, I (2007). We affirm in part and reverse in part.

I

The record supports the following facts.  On August 27, 2013, the defendant was involved in two motor vehicle accidents in Hollis.  She was charged with driving under the influence (DUI) and with violating the "conduct after an accident" statute.  See RSA 265-A:2, I(a)(2014); RSA 264:25, I.  One witness saw a "big puff of dirt as if an impact had happened" on the side of the road and saw a gold sedan "careen back onto the roadway" and continue driving.  The witness noticed some debris, which he later identified as broken mailboxes.  That witness called 911 to report the first accident and gave the vehicle's license plate number.  A second witness later saw a "silverish" sedan drive off the road and into a wooded area.  This witness instructed another person to call 911 while the witness assisted the driver, whom he identified as the defendant.  A police officer dispatched to both calls identified the defendant as the driver at the second accident and testified that the license plate number of the vehicle matched the plate number reported in the first 911 call.  The officer later returned to the scene of the first accident and observed two damaged mailboxes and tire tracks leading off, and then back onto, the road.

Following a bench trial, during which the defendant represented herself, she was acquitted on the DUI charge, but was convicted on the conduct after an accident charge.  As part of her sentence, she was ordered to pay $525 in restitution for the damage to the mailboxes.  The defendant moved for reconsideration, arguing that the complaint alleging conduct after an accident was insufficient and that the restitution order was improper.  The trial court denied the motion and this appeal followed.

II

The defendant first argues that the trial court improperly ordered restitution because the only offense for which she was convicted did not cause any economic loss.  The defendant contends that the damage to the mailboxes was caused before she left the scene of the accident and therefore cannot be a direct result of her criminal act.  The State argues that restitution is proper because the property damage resulted from the factual allegations that support the conduct covered by the conviction.  The State contends that, because the accident and property damage are necessary elements of the conviction for conduct after an accident, the damage logically resulted from her criminal act.  The State also argues that ordering restitution in this case fulfills the purpose of the restitution statute, which carries the presumption that the victim will be compensated by the offender who is responsible for the loss.  See RSA 651:61-a, I (2007).

Because resolution of this issue requires the interpretation of a statute, our review is de novo.  State v. Gibson, 160 N.H. 445, 448 (2010).  In matters of statutory interpretation, we are the final arbiters of the legislature's intent as

expressed in the words of the statute considered as a whole.  Id.  We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice.  Id.  We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Id.  Further, we interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language it did not see fit to include.  Id.  Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation.  Id.

"Any offender may be sentenced to make restitution in an amount determined by the court."  RSA 651:63, I.  An "[o]ffender" is "any person convicted of a criminal or delinquent act."  RSA 651:62, IV (2007).  "Restitution" is defined, in relevant part, as "money or service provided by the offender to compensate a victim for economic loss."  RSA 651:62, V (2007).  "Economic loss" is defined as "out-of-pocket losses or other expenses incurred as a direct result of a criminal offense," including the "value of damaged, destroyed, or lost property."  RSA 651:62, III (2007).  And "victim" is "a person . . . who suffers economic loss as a result of an offender's criminal conduct."  RSA 651:62, VI (2007).  "Courts are to presume that a defendant responsible for a victim's loss will pay restitution."  State v. Schwartz, 160 N.H. 68, 71 (2010); see also RSA 651:61-a, I.

The phrase "direct result," as used in RSA 651:62, III, is not defined in the statute or elsewhere in the Criminal Code.  We were asked to clarify the meaning of "direct result" in State v. Armstrong, 151 N.H. 686 (2005), but we declined to do so.  In that case, we decided that we did not need to develop a specific "test to ascertain at what point an event is no longer a direct result of a crime."  Armstrong, 151 N.H. at 687.  Instead, we "simply note[d] . . . that a defendant may be held liable for economic losses directly resulting from the factual allegations that support the conduct covered by the conviction."  Id.  Once again we find it unnecessary to attempt to develop a test for determining the outer limits of the connection that must exist between harm or loss, on the one hand, and criminal conduct, on the other, to support an order of restitution.  Rather, we find it sufficient for present purposes to hold that the damage at issue here was not a result of the crime for which the defendant was convicted.

Although there is a presumption in favor of restitution, the language of the statute itself limits restitution to losses or expenses "incurred as a direct result of a criminal offense."  RSA 651:62, III (emphasis added).  Likewise, such restitution can be paid only to a victim who suffers loss "as a result of an offender's criminal conduct."  RSA 651:62, VI (emphasis added).  "Result" is defined, in relevant part, as "[a] consequence, effect, or conclusion."  Black's Law Dictionary 1509 (10th ed. 2014).  The plain language of the restitution statute clearly and unambiguously requires a causal connection between the criminal act and the economic loss or damage.

3

The State argues that such a causal connection exists here because, without the accident and the property damage, there would be no crime of conduct after an accident. The conduct after an accident statute states, in relevant part:

> The driver of a vehicle who knows or should have known that he or she has just been involved in any accident which resulted in . . . damages to property, shall immediately stop such vehicle at the scene of the accident and give . . . to the owner of any property damaged, the driver's name and address, driver's license number, [and] the registration number of the vehicle . . . .

RSA 264:25, I (2014). Although it is true that an accident and property damage are prerequisites to a conviction under this statute, it is not necessary for conviction that the driver have been at fault in any way in <u>causing</u> the accident or the damage. Thus, for example, a driver who is innocently involved in an accident caused by the fault of another driver, and which results in damage to property, may be found guilty of violating RSA 264:25, I, if he or she leaves the scene of the accident without providing the information required by the statute. RSA 264:25, I, merely requires that a defendant be "involved in" an accident causing damage; it does not require a causal connection between the defendant and the damage. In contrast, the restitution statute requires a causal connection between the defendant's conduct and the damage.

The criminal conduct proscribed under RSA 264:25, I, takes place only <u>after</u> an accident has occurred; the crime is not the accident itself. Therefore, to support an order of restitution based on a conviction under RSA 264:25, I, the economic loss must be a result of the criminal act of leaving the scene of the accident, and not a result of the actual accident. Logically, something that occurred earlier in time cannot be the result of something that occurred later. Here, the damage to the mailboxes occurred during the accident. The crime for which the defendant was convicted — conduct after an accident — necessarily occurred afterward. As the damage was already done, the defendant's criminal conduct did not cause the economic loss suffered. In other words, the economic loss resulting from the damaged mailboxes simply cannot be the result of the defendant's leaving the scene of the accident. We therefore reverse the trial court's restitution order.[*]

---

[*] We note that our holding is in accord with what appears to be the majority view of other jurisdictions that have considered this issue. <u>See</u> <u>State v. Williams</u>, 520 So. 2d 276, 277-78 (Fla. 1988); <u>State v. Starkey</u>, 437 N.W.2d 573, 575 (Iowa 1989); <u>State v. Beaudoin</u>, 503 A.2d 1289, 1290 (Me. 1986); <u>State v. Steinolfson</u>, 483 N.W.2d 182, 184 (N.D. 1992); <u>Columbus v. Cardwell</u>, 893 N.E.2d 526, 528-29 (Ohio Ct. App. 2008); <u>Com. v. Cooper</u>, 466 A.2d 195, 196-97 (Pa. Super. Ct. 1983). <u>Contra</u> <u>People v. Carbajal</u>, 899 P.2d 67, 73-74 (Cal. 1995); <u>City of Billings v. Edward</u>, 285 P.3d 523, 529 (Mont. 2012); <u>In re C.T.</u>, 43 S.W.3d 600, 603 (Tex. App. 2001).

4

III

The defendant also challenges the sufficiency of the complaint, which stated, in relevant part, that the defendant "did operate a 1995 Honda Accord and did know or should have known an accident occurred at 81 Broad St where property of another was damaged and failed to stop . . . but did in fact leave the scene of the accident." The defendant argues that the complaint fails to include an element of the offense because it did not allege that the defendant was involved in the accident. A defendant must bring challenges to the sufficiency of the charging document before trial. See State v. Ortiz, 162 N.H. 585, 590 (2011); see also Dist. Div. R. 1.8(E) ("Any motion which is capable of determination without the trial of the general issue shall be raised before trial . . . ."). Failure to raise this claim in a timely fashion, however, does not preclude all appellate review; it instead confines our review to plain error. See Ortiz, 162 N.H. at 590. For us to find plain error: "(1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights." State v. Mueller, 166 N.H. 65, 68 (2014) (quotation omitted). "If all three of these conditions are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion: the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. (quotation omitted). The plain error rule "is used sparingly, however, and is limited to those circumstances in which a miscarriage of justice would otherwise result." Id. (quotation omitted). "We have looked to the federal plain error analysis in applying our plain error rule." State v. Rawnsley, 167 N.H. 8, 11 (2014) (quotation omitted).

Assuming without deciding that (1) an error occurred and (2) the error was plain, we examine whether the error satisfies the third prong. In order for a defendant to prevail under the third prong, "the defendant must demonstrate that the error was prejudicial, i.e., that it affected the outcome of the proceeding." Mueller, 166 N.H. at 70 (quotation omitted). "We will find prejudice under the third prong when we cannot confidently state that the [fact-finder] would have returned the same verdict in the absence of the error." Id. The defendant argues that the error affected her right to due process and her right to be free from double jeopardy. This argument, however, confuses the issue. Under the third prong, the question is not whether the error in the abstract violated a substantial right, but whether the error actually affected the outcome of the proceeding. See United States v. Mojica-Baez, 229 F.3d 292, 307 (1st Cir. 2000) (stating that the third plain error prong "is not satisfied simply by showing that an [error occurred] . . . . [T]he defendants must demonstrate that the error affected the outcome of the district court proceedings." (quotation and citations omitted)).

A valid charging document "must inform a defendant of the offense with which [she] is charged with sufficient specificity to enable [her] to prepare for trial." State v. Cheney, 165 N.H. 677, 679 (2013). The defendant here has

5

made no showing, nor even argued, that the complaint limited her ability to prepare for trial or that she would have prepared for trial differently had the complaint contained the phrase "involved in any accident." Although it does not explicitly so state, the complaint, taken as a whole, can be fairly read to imply the defendant's involvement in the accident. See State v. Bird, 161 N.H. 31, 37-38 (2010) (finding an indictment adequate when one of the elements of the offense was only implicitly stated). Although we express no opinion regarding the sufficiency of this complaint had the defendant objected to it before trial, it is enough for our purposes here to recognize that the wording of the complaint provided the defendant with the ability to understand the charge against her and to adequately prepare for trial. Absent any specific showing that the defendant was unable to prepare for trial or would have prepared for trial differently, we cannot say the error was prejudicial.

Further, the record shows that the wording of the complaint did not prejudice the defendant when the court determined her guilt. The judge stated that he needed "to be able to conclude that the vehicle that hit those mailboxes [was] the same vehicle that [the witnesses] saw at the [later] accident." This demonstrates that the fact-finder, in reaching a verdict, considered whether the defendant was involved in the accident, despite the lack of that explicit language in the complaint. And the court's judgment of conviction confirms that the court found beyond a reasonable doubt that the defendant was involved in the accident. Therefore, the alleged deficiency in the complaint did not affect the outcome of the case. Accordingly, because the defendant has failed to demonstrate plain error, we uphold her conviction.

Affirmed in part; and
reversed in part.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.