NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2020-0570

THE STATE OF NEW HAMPSHIRE

v.

JUSTIN PARR

Argued: February 10, 2022
Opinion Issued: March 17, 2022

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Weston R. Sager, assistant attorney general, on the brief, and Anthony J. Galdieri, orally), for the State.

Lehman Major List, PLLC, of Concord (Sean R. List on the brief and orally), and Law Office of Michael J. Zaino, PLLC, of Hampton (Michael J. Zaino on the brief), for the defendant.

DONOVAN, J.  The defendant, Justin Parr, appeals his conviction, following a bench trial in the Superior Court (Schulman, J.), on one count of being a felon in possession of a firearm.  RSA 159:3, I(a) (2014).  The defendant argues that the Superior Court (Kissinger, J.) erred by denying his motion to

dismiss his felon in possession of a firearm indictment because, in his view, RSA 159:3, I(a) does not prohibit felons from possessing antique pistols and revolvers. The defendant also argues that several provisions of RSA chapter 159 are unconstitutionally vague in violation of the State and Federal Constitutions. We conclude that the term "other firearm" in RSA 159:3, I(a) applies to any weapon from which a shot can be discharged by gunpowder, including antique firearms. We further conclude that RSA 159:3, I(a) is not unconstitutionally vague as applied to felons in possession of antique firearms. Accordingly, we affirm.

## I. Facts

The following facts are undisputed or supported by the record. In April 2018, the defendant was convicted of a felony and placed on probation. In April 2019, the defendant's probation and parole officer (PPO) received information that the defendant was using firearms at his Andover residence, in violation of his probation. After searching his vehicle and the Andover residence, the PPO and local police found black powder, a package of shot, and a firearm (charged handgun), among other things. The New Hampshire State Laboratory examined the charged handgun and classified it as a ".44 caliber . . . black powder percussion cap revolver, model 1851 Reb Nord Navy Sheriff" with two lead balls and two powder charges. The laboratory also tested the charged handgun and concluded that it functioned normally.

Ultimately, the State indicted the defendant on one count of being a felon in possession of a firearm, among other charges. The defendant moved to dismiss the felon in possession of a firearm indictment. Relying upon RSA 159:1 (2014) and federal law, he argued that RSA 159:3, I(a) contains an exception for antique firearms and that, because the firearm found at the Andover residence was an antique, he did not violate the statute. See 18 U.S.C. § 921(a)(3), (16) (2018). The State objected, arguing that the term "other firearm" in RSA 159:3, I(a) included the charged handgun. See RSA 159:3, I(a). After a hearing, the trial court denied the defendant's motion to dismiss. The court concluded that the term "other firearm" in RSA 159:3, I(a) "prohibit[s] felons from possessing any weapon within the broad class of firearms," which includes "antiques or replicas if they are weapons from which shots can be discharged by gunpowder." (Quotation omitted.) The defendant filed a motion for reconsideration, which the court denied.

Thereafter, to preserve his right to appeal the denial of his motion to dismiss, the defendant stipulated to the facts and requested a bench trial. The State made an offer of proof, to which the defendant did not object, and the trial court convicted the defendant on the felon in possession of a firearm indictment. This appeal followed.

2

## II. Analysis

### A. Statutory Interpretation

The defendant first argues that, in denying his motion to dismiss, the trial court misconstrued RSA 159:3, I(a) as applying to antique firearms. The interpretation of a statute presents a question of law, which we review <u>de</u> <u>novo</u>. See <u>State v. Pinault</u>, 168 N.H. 28, 31 (2015). In matters of statutory interpretation, the intent of the legislature is expressed in the words of the statute considered as a whole. See <u>id</u>. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. <u>Id</u>. Further, we interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include. <u>Id</u>. Finally, we interpret statutes in the context of the overall statutory scheme and not in isolation. <u>Id</u>.

RSA 159:3, I(a) provides:

I. A person is guilty of a class B felony if he:

> (a) Owns or has in his possession or under his control, <u>a pistol, revolver, or other firearm</u>, or slungshot, metallic knuckles, billies, stiletto, switchblade knife, sword cane, pistol cane, blackjack, dagger, dirk-knife, or other deadly weapon as defined in RSA 625:11, V . . . .

RSA 159:3, I(a) (emphasis added). The terms "pistol" and "revolver" mean "any firearm with [a] barrel less than 16 inches in length" but do "not include antique pistols, gun canes, or revolvers." RSA 159:1. Here, there is no dispute that the charged handgun — a black powder percussion cap revolver — is an antique, and, therefore, does not qualify as a "pistol" or "revolver" under RSA 159:3, I(a). <u>See</u> RSA 159:1. Thus, the issue is whether the charged handgun falls within the meaning of "other firearm" in RSA 159:3, I(a).

Because RSA chapter 159 does not expressly define the phrase "other firearm," we look to the dictionary for guidance. <u>See</u> <u>State v. Ruff</u>, 155 N.H. 536, 539 (2007). The dictionary defines the term "firearm" as "a weapon from which a shot is discharged by gunpowder." <u>Webster's Third New International Dictionary</u>, 854 (unabridged ed. 2002). We previously adopted this definition in <u>State v. Beaudette</u>, 124 N.H. 579, 581 (1984), when defining the term "firearm" for the purposes of New Hampshire's felonious use of a firearm statute, <u>see</u> RSA 650-A:1 (2016). In so holding, we observed that "other jurisdictions have considered this question and determined that gunpowder and the capability of discharge are the distinguishing features of a firearm." <u>Beaudette</u>, 124 N.H. at 581 (collecting cases); <u>see</u> <u>State v. St. John</u>, 129 N.H. 1,

2-4 (1986) (holding that the trial court did not err by refusing to instruct the jury on the definition of "firearm" set forth in Beaudette because the defendant did not dispute that the charged weapon was a "firearm" under RSA 159:3).

Accordingly, consistent with our previous holdings, we conclude that the term "firearm" as used in RSA 159:3, I(a) means "a weapon from which a shot is discharged by gunpowder." Beaudette, 124 N.H. at 581 (quotation omitted). We further conclude, as the trial court did, that the term "other firearm" prohibits felons from possessing any weapon within the broad class of firearms. RSA 159:3, I(a). This prohibition includes antique weapons from which shot can be discharged by gunpowder. See Beaudette, 124 N.H. at 581. As explained above, the New Hampshire State Laboratory test-fired the charged handgun and determined that it functioned normally. Therefore, applying the above-stated definition of firearm, we conclude that the defendant's possession of the charged handgun fell within the scope of RSA 159:3, I(a) as an "other firearm."

The defendant counters that interpreting the phrase "other firearm" as including any weapon that discharges a shot by gunpowder renders superfluous the inclusion of "pistol" and "revolver" in RSA 159:3, I(a). We observe that "[w]e must give effect to all words in a statute, and presume that the legislature did not enact superfluous or redundant words." State v. Thiel, 160 N.H. 462, 465 (2010) (quotation omitted). However, we are not persuaded that our interpretation of RSA 159:3, I(a) renders the words "pistol" and "revolver" superfluous. The legislature's use of the word "other" in RSA 159:3, I(a) demonstrates that the statute prohibits felons from possessing any "firearm" that does not fall within the definition of "[p]istol or revolver" in RSA 159:1, such as antiques. See RSA 159:1; Webster's Third New International Dictionary 1598 (unabridged ed. 2002) (defining "other" as "something that exists as an opposite of or as excluded by something else"). Therefore, although the terms "pistol," "revolver," and "firearm" may overlap, because the legislature employed the term "other firearm," the three terms are not coextensive. RSA 159:3, I(a).

In addition, the defendant argues that fireworks discharge shot from gunpowder, and that "virtually anything" can be considered a deadly weapon. State v. Kousounadis, 159 N.H. 413, 425 (2009). Therefore, he argues, interpreting the phrase "other firearm" as including any weapon that discharges a shot by gunpowder "leads to the absurd conclusion" that many residential use fireworks would be considered firearms. See State v. Wilson, 169 N.H. 755, 766 (2017) ("[A] statute will not be construed so as to lead to absurd consequences."). We disagree. The defendant conflates the terms "firearm" and "deadly weapon." RSA 159:3. Although a firework may become a deadly weapon based upon how it is used, see RSA 625:11, V (2016), that does not inform whether its mere possession makes it a "firearm" under RSA 159:3, I(a).

4

In further support of his argument that RSA 159:3, I(a) does not apply to antiques, the defendant points to the language of RSA 159:1, which provides:

> Pistol or revolver, as used herein, means any firearm with barrel less than 16 inches in length. It does not include antique pistols, gun canes, or revolvers. An antique pistol, gun cane, or revolver, for the purposes of this chapter, means any pistol, gun cane, or revolver utilizing an early type of ignition, including, but not limited to, flintlocks, wheel locks, matchlocks, percussions and pin-fire, but no pistol, gun cane, or revolver which utilizes readily available center fire or rim-fire cartridges which are in common, current use shall be deemed to be an antique pistol, gun cane, or revolver. Nothing in this section shall prevent antique pistols, gun canes, or revolvers from being owned or transferred by museums, antique or arms collectors, or licensed gun dealers at auctions, gun shows, or private premises provided such ownership or transfer does not conflict with federal statutes.

RSA 159:1 (emphasis added). The defendant argues that the last sentence of RSA 159:1 creates an "antique revolver exemption," which "provides a safe haven for the narrow purpose of owning or transferring antique pistols or revolvers in a manner that complies with federal law." (Quotation omitted.) The defendant notes that the federal definition of "firearm" excludes antiques, such as the charged handgun. See 18 U.S.C. § 921(a)(3), (16). Therefore, he argues, because his ownership of the charged handgun complied with federal law, the so-called "antique revolver exemption" of RSA 159:1 precludes his prosecution under RSA 159:3, I(a).

We are unpersuaded by the defendant's argument. The plain language of the last sentence of RSA 159:1 limits its application to "this section." RSA 159:1. By contrast, the first and third sentences of RSA 159:1 employ broader language — "as used herein" (in the former), and "for the purposes of this chapter" (in the latter). Id. This contrast illustrates the legislature's intent to limit the application of the language of the last sentence to "this section." Id. Contrary to the defendant's argument, nothing in RSA 159:1 suggests that the legislature intended to categorically exclude a felon's possession of antique firearms from prosecution under RSA 159:3, I(a). To hold otherwise would not only contravene the statute's plain language, but also add language to the statute that the legislature did not see fit to include. See Pinault, 168 N.H. at 31.

Additionally, drawing upon references to federal law in RSA 159:1, as well as RSA 159:26 (2014), the defendant argues that the legislature intended the term "firearm," as used in RSA chapter 159, to be coextensive with federal law. See RSA 159:26, I ("To the extent consistent with federal law . . . ."). He

5

therefore argues that, because the federal definition of "firearm" excludes antiques, see 18 U.S.C. § 921(a)(3), (16), the legislature intended the term "firearm" in RSA 159:3, I(a) to also exclude antiques.

The defendant's reliance upon RSA 159:1 and RSA 159:26 is unavailing. The plain meaning of each provision's reference to federal law establishes only that conduct otherwise prohibited by federal law shall not be permitted under RSA chapter 159. Put another way, the legislature intended the references to federal law in RSA 159:1 and RSA 159:26 to address preemption and a potential conflict between state and federal law. See Appeal of Panaggio, 174 N.H. 89, 94-95 (2021) (explaining federal preemption principles). However, the defendant conceded that he "has made no argument that federal law preempts State firearms law based upon express or field preemption." In light of this concession, the defendant cannot rely upon these references to suggest that the legislature intended the federal definition of a "firearm" to preempt our state laws. Accordingly, we conclude that the trial court did not misconstrue RSA 159:3, I(a) as applying to antique firearms.

## B. Vagueness

The defendant further argues that RSA 159:3, I(a), RSA 159:3-a (2014), and RSA 159:7 (2014) are unconstitutionally vague in violation of his due process rights under the State and Federal Constitutions. Specifically, the defendant argues that, given the so-called "antique revolver exemption and federal consistency provisions" in RSA 159:1 and RSA 159:26, along with the fact that federal law exempts antiques from the definition of "firearm," no person of ordinary intelligence could "plausibly read" the word "firearm" in RSA 159:3, RSA 159:3-a, and RSA 159:7 as applying to antiques. Therefore, the defendant argues, the above-cited provisions of RSA chapter 159 fail to put parties, such as the defendant, on notice of the "precise conduct" that they prohibit. (Quotation omitted.)

We first address the defendant's argument under the State Constitution, and cite federal opinions for guidance only. See State v. Ball, 124 N.H. 226, 231-33 (1983). The constitutionality of a statute presents a question of law, which we review de novo. State v. Lamarche, 157 N.H. 337, 340 (2008). A statute can be impermissibly vague for either one of two independent reasons: (1) it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) it authorizes or even encourages arbitrary and discriminatory enforcement. State v. MacElman, 154 N.H. 304, 307 (2006). A party challenging a statute as void for vagueness bears a heavy burden of proof in light of the strong presumption favoring a statute's constitutionality. Id. Moreover, mathematical exactness is not required in a penal statute, nor is a law invalid merely because it could have been drafted with greater precision. Id.

As an initial matter, we note that the defendant has not sufficiently developed a facial challenge, arguing only that select provisions of RSA chapter 159 are unconstitutionally vague as applied. See Lamarche, 157 N.H. at 340 ("Because we conclude that the defendant has failed to develop his argument that the statute is facially invalid, we further limit our analysis to his as applied claim."). Moreover, the trial court did not convict the defendant of violating RSA 159:3-a or RSA 159:7. Thus, the defendant lacks standing to challenge those provisions as unconstitutionally vague, and we decline to address that part of his argument. See Avery v. Comm'r, N.H. Dep't of Corr., 173 N.H. 726, 737 (2020) ("Standing . . . requires parties to have personal legal or equitable rights that are adverse to one another, with regard to an actual, not hypothetical, dispute, which is capable of judicial redress."). Therefore, we need only consider whether RSA 159:3, I(a) is unconstitutionally vague as applied to a felon in possession of an antique firearm.

Even assuming, without deciding, that a fundamental right is implicated, we conclude that RSA 159:3, I(a) provides a person of ordinary intelligence a reasonable opportunity to understand the conduct that RSA 159:3, I(a) prohibits. As explained above, the plain language of what the defendant characterizes as the "antique firearm exception" within the last sentence of RSA 159:1 limits its application to "this section." Moreover, given the dictionary definitions of the words "other" and "firearm," any person of ordinary intelligence would understand that RSA 159:3, I(a) prohibits felons from possessing any "firearm" that does not fall within the definition of "[p]istol or revolver" in RSA 159:1. See RSA 159:3, I(a); Webster's Third New International Dictionary, supra at 854, 1598. This language is also consistent with the statutory purpose of "protect[ing] the public from felons who would possess or have under their control instruments capable of causing serious injury or death." State v. Beckert, 144 N.H. 315, 317 (1999). Given the statute's purpose and the plain meaning of its language, we conclude that no person of ordinary intelligence could conclude that RSA 159:3, I(a) authorizes felons to possess "weapon[s] from which a shot is discharged by gunpowder," regardless of whether the weapons are antiques. Beaudette, 124 N.H. at 581 (quotation omitted).

To the extent that the defendant argues that RSA 159:3, I(a) authorizes or encourages arbitrary or discriminatory enforcement, he has not sufficiently developed that argument in his brief, and we decline to address it. See State v. Blackmer, 149 N.H. 47, 49 (2003) ("[W]e confine our review to only those issues that the defendant has fully briefed."). Because we conclude that the Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances, see MacElman, 154 N.H. at 310; see also Hill v. Colorado, 530 U.S. 703, 732 (2000), we reach the same result under the Federal Constitution as we do under the State Constitution.

7

### III. Conclusion

For the foregoing reasons, we affirm the defendant's conviction.  Any issues that the defendant raised in his notice of appeal, but did not brief, are deemed waived.  State v. Bazinet, 170 N.H. 680, 688 (2018).

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.