NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2022-0523

THE STATE OF NEW HAMPSHIRE

v.

DANIEL LAGUERRE

Submitted: November 10, 2022
Opinion Issued: December 16, 2022

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Audriana Mekula, attorney, on the memorandum of law), for the State.

Rath, Young and Pignatelli, P.C., of Concord (Cassandra A. Moran and Michael S. Lewis on the brief), for the defendant.

DONOVAN, J. The defendant, Daniel Laguerre, appeals an order of the Superior Court (Delker, J.) denying his motion to amend bail. The court ruled that RSA 597:2, III(a) (Supp. 2022) does not authorize it to consider whether the conditions of confinement endanger the defendant's safety when deciding whether to order preventive detention. The defendant argues that RSA 597:2, III(a) permits courts to consider the safety of a defendant, including factors pertaining to his or her health and safety while confined, when determining bail. We conclude that the trial court correctly interpreted RSA 597:2, III(a) as

applied in this case and hold that it does not authorize a court to consider the safety of a defendant while detained when deciding whether to grant bail. Accordingly, we affirm.

## I. Facts

The following facts are agreed upon by the parties or are otherwise supported by the record. In August 2022, the defendant was arrested and charged with second degree assault and domestic violence – criminal restraint. Based on this incident, a bail commissioner ordered the defendant released on personal recognizance with conditions that, in part, prohibited the defendant from having any contact with the victim or being within 300 feet of her. The commissioner scheduled the arraignment for September 2022. Prior to his arraignment and while on release, the defendant was again arrested and charged with several additional crimes of violence against the same victim. At his arraignment after the second incident, the trial court ordered the defendant preventively detained pursuant to RSA 597:2, III(a). The defendant has since been held at the Hillsborough County House of Corrections (HCHOC).

Shortly after his detention, the defendant filed an emergency motion to amend bail alleging that he suffers from "a series of complex medical issues and chronic illnesses" that, without proper medical treatment, could result in "severe complications or death." In his motion, the defendant claimed that he had not received proper medical care while in detention and was "denied life-saving medication." The defendant alleged that the HCHOC's failure to provide proper medical care violated his constitutional rights, and that, if released, he would be able to "access and take his life-saving medication." The defendant sought release on cash bail and an order from the court requiring the HCHOC to provide him with proper medical treatment.

The trial court denied the motion and ruled that RSA 597:2, III(a) does not authorize the court to consider whether "the conditions of [a detainee's] confinement endanger [the detainee's] health and welfare" when deciding whether to order preventive detention. The court reasoned that RSA 597:2, III(a) allows a court to order a defendant's preventive detention or release on restrictive bail conditions if the court finds by clear and convincing evidence that release will endanger the safety of that person or the public. In making this decision, the court explained, it may consider all evidence relevant to the issue of dangerousness. In this case, the court found that the defendant did not argue that the factors he set forth in his motion to amend bail — namely, the alleged inadequate medical care — make him less dangerous or more likely to follow restrictive bail conditions. Moreover, the court also noted that the motion for a bail hearing failed to provide the HCHOC notice or an opportunity to respond to the defendant's constitutional allegations.

Subsequently, the defendant filed a motion to reconsider, which the court denied, reiterating that the denial of the defendant's motion to amend bail was without prejudice to his ability to challenge his conditions of confinement "in the proper procedural form." This appeal followed.

## II. Analysis

At issue is whether RSA 597:2, III(a) authorizes a trial court to consider a defendant's safety while detained when deciding whether to release or detain the defendant pending trial. The resolution of this issue presents a question of statutory interpretation. The interpretation of a statute presents a question of law that we review de novo. See State v. Pinault, 168 N.H. 28, 31 (2015). In matters of statutory interpretation, the intent of the legislature is expressed in the words of the statute considered as a whole. See id. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include. Id. We interpret statutes in the context of the overall statutory scheme and not in isolation. Id.

We begin our analysis by setting forth the relevant statutory provisions. As a general principle, anyone who is arrested is eligible for release pending trial. RSA 597:1 (2001). In certain circumstances, however, a court may order a defendant's preventive detention. RSA 597:2 (Supp. 2022). RSA 597:2, III sets forth three issues that a court must consider when deciding whether to release or detain an individual pending trial. It provides:

> When considering whether to release or detain a person, the court shall consider the following issues:
>
> (a) Safety of the public or the defendant. If a person is charged with any criminal offense, an offense listed in RSA 173-B:1, I, or a violation of a protective order under RSA 458:16, III, or after arraignment, is charged with a violation of a protective order issued under RSA 173-B, the court may order preventive detention without bail, or, in the alternative, may order restrictive conditions including but not limited to electronic monitoring and supervision, only if the court determines by clear and convincing evidence that release will endanger the safety of that person or the public. In determining whether release will endanger the safety of that person or the public, the court may consider all relevant factors presented pursuant to paragraph IV.
>
> (b) Assuring the court appearance of charged persons.
>     . . . .

3

(c) Failure of a person to abide by previous bail conditions. . . .

RSA 597:2, III (emphases added).

As to the merits, the defendant argues that the phrase "[w]hen considering whether to release or detain a person, the court shall consider the . . . [s]afety of the public or the defendant," id., allows a court when contemplating bail to consider the defendant's safety, both while detained and upon his or her release. Specifically, the defendant contends that the trial court should have considered the fact that his health is at risk while detained at the HCHOC due to the inadequate medical care he claims to have received. The State counters that RSA 597:2, III(a) permits a court to consider only the safety of the defendant and the public upon the defendant's release when contemplating bail. Therefore, according to the State, factors related to the defendant's safety while detained are irrelevant to the court's bail decision. We agree with the State.

We conclude that the plain language of RSA 597:2, III(a) permits a trial court to consider the safety of the defendant and the public only upon the defendant's release when contemplating bail. RSA 597:2, III identifies three issues that a court must consider when deciding "whether to release or detain a person," including the "[s]afety of the public or the defendant." When considering the "[s]afety of the public or the defendant," a court must "determine[] by clear and convincing evidence that <u>release</u> will endanger the safety of that person or the public." RSA 597:2, III(a) (emphasis added). To make this decision, a court may consider factors relevant to "whether <u>release</u> will endanger the safety of that person or the public." <u>Id</u>. (emphasis added). Thus, when reading RSA 597:2, III(a) in its entirety, it is clear that, as the trial court reasoned, a defendant's safety may be a relevant factor, but only when a defendant poses a risk to his or her own safety if released into the community.

The defendant argues that RSA 597:2, III(a) additionally requires the court to "make a determination on the safety of the defendant with regards to his continued incarceration." He contends that the procedure outlined in RSA 597:2, III(a), particularly the last sentence that authorizes consideration of factors relevant to "whether release will endanger the safety of that person or the public," supplements, but does not limit, the subsection's initial instruction to consider, more broadly, the "[s]afety of the public or the defendant." <u>Id</u>. We disagree, because that interpretation fails to consider the phrase "[s]afety of the public or the defendant," id., within the context of the bail statute as a whole. <u>See</u> <u>Pinault</u>, 168 N.H. at 31.

We consider the phrase "[s]afety of the public or the defendant," id., in conjunction with the remainder of subsection (a) of RSA 597:2, III. In this context, the phrase resembles a heading that describes the content subsequently discussed in subsection (a). <u>See</u> RSA 597:2, III(a); <u>Black's Law</u>

4

Dictionary 864 (11th ed. 2019) (defining "heading" in part as "[a] brief title or caption of a section of a statute"); 1A N. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 21:4, at 167 (7th ed. 2009) (explaining that a section heading "should briefly and specifically disclose the content of the section. It should not be a recapitulation of the contents of the section."). "Safety of the public or the defendant" introduces the first issue that a court must consider when determining whether to release or detain a defendant pending trial. RSA 597:2, III(a). The remainder of subsection (a) then specifies how a court should contemplate the safety of the public and the defendant in its bail determination — specifically, that it should consider the safety of the defendant and the public if the defendant is released from confinement. Id. Subsections (b) and (c) of RSA 597:2, III are similarly formatted and include introductory language setting forth the second and third issues that a court must consider when determining whether to release or detain a defendant pending trial, followed by a more detailed explanation.

Analogizing the phrase "[s]afety of the public or the defendant" to a heading invites the interpretive rule that a general heading does not control the specific text of a statute. See Banaian v. Bascom, 175 N.H. 151, 157 (2022) ("'[H]eadings and titles are not meant to take the place of the detailed provisions of the text.'" (quoting Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co., 331 U.S. 519, 528 (1947))). We will not interpret RSA 597:2, III(a) such that the broad language of "[s]afety of the public or the defendant" predominates the more detailed instruction that a court should consider the defendant's safety only upon release when deciding bail. See State v. Hodgkiss, 132 N.H. 376, 378-80 (1989) (concluding that, although the section heading of a local ordinance discussed prohibitions "generally," the provision's text pertained to merchants and the regulation of commercial, rather than political, activity, and therefore did not include the defendant's political conduct). Moreover, headings "are of use only when they shed light on some ambiguous word or phrase," Brotherhood of R.R., 331 U.S. at 529, and we have concluded that the meaning of RSA 597:2, III(a) is unambiguous. See In re CAN Ins. Companies, 143 N.H. 270, 274 (1998) ("'The title of a statute is not conclusive of its interpretation, and where the statutory language is clear and unambiguous this court will not consider the title in determining the meaning of the statute.'" (quoting State v. Kilgus, 125 N.H. 739, 742 (1984))).

Moreover, although New Hampshire's bail statute has been revised many times, it has consistently required courts to consider whether a defendant's release would endanger the safety of the defendant or the public without mentioning the defendant's safety while confined. See, e.g., RSA 597:2, III(a), IV(a) (Supp. 2019) (amended 2020); RSA 597:2, III(a), IV(a) (Supp. 2018); RSA 597:2, II, III, III-a (Supp. 2016); RSA 597:2, II, III, III-a (Supp. 2011). Authorizing a court when deciding whether to grant or deny bail to broadly consider the defendant's safety, including while confined, rather than just the defendant's safety upon release, would constitute a significant departure from

the established dangerousness factor. Although it is within the legislature's prerogative to grant courts this level of discretion, it is unlikely that the legislature did so by adopting the single phrase, "[s]afety of the public or the defendant." See Whitman v. American Trucking Associations, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."); compare RSA 597:2, IV(a) (Supp. 2019) (amended 2020), with RSA 597:2, III(a) (Supp. 2022) (adding the phrase "[s]afety of the public or the defendant").

In a related argument, the defendant maintains that the trial court erred by failing to consider his assertion that the allegedly inadequate medical care he has received at the HCHOC violates his state and constitutional rights. However, in his reply brief the defendant clarified that he is not asking the State to defend or otherwise correct the conditions of his confinement and, by requesting bail, he was not asking the trial court to determine whether the conditions of his confinement constitute a constitutional violation. Rather, he claims that the alleged lack of proper medical care "merely provide[s] background to his request for bail," "outline[s] why his continued detention is unsafe," and "explain[s] why these conditions create an environment whereby bail is an appropriate remedy." Accordingly, the defendant suggests that when deciding whether to grant or deny bail, a court must consider these circumstances based upon the statutory language in RSA 597:2, III(a), the broad discretion granted to trial courts to make bail determinations, and the judiciary's inherent authority to protect constitutional rights.

Although courts generally have such discretion, for the reasons discussed above, RSA 597:2, III(a), by its terms, does not authorize a court to consider a defendant's safety while detained when deciding whether to release a defendant on bail. A trial court's discretion in making bail decisions is not boundless. That discretion may be cabined by statute, as it is in RSA 597:2, III(a). See State v. Furgal, 161 N.H. 206, 210, 215 (2010) (ruling that RSA 597:1-c is constitutional, even though it deprives courts of discretion in certain bail cases). The judiciary possesses the express and inherent authority to protect a defendant's constitutional rights, but the defendant fails to explain how it applies in this context. See State v. Blackmer, 149 N.H. 47, 49 (2003) (declining to address arguments "not sufficiently developed for appellate review").

The defendant also argues that the trial court erred in denying his motion based on the HCHOC's lack of notice or opportunity to respond. We decline to address this argument, however, given our conclusion that the plain meaning of RSA 597:2, III(a) does not permit a trial court to grant bail based on the constitutional violation alleged in this case. To the extent that the defendant asks that we consider the merits of his constitutional claims, his passing references to constitutional provisions without application to the facts

6

of the case do not develop a legal argument sufficiently for our review.  See Blackmer, 149 N.H. at 49.  In any event, even if the defendant developed the argument, any alleged constitutional violation would not alter our statutory analysis.  We do not minimize the potential harm that the defendant alleges that he has suffered while detained.  However, as the trial court observed, the denial of his motion to amend bail is without prejudice to his ability to file an appropriate pleading challenging his conditions of confinement.

## III. Conclusion

For the foregoing reasons, we affirm the trial court's interpretation of RSA 597:2, III(a) and conclude that RSA 597:2, III(a) does not authorize a trial court to consider a defendant's safety while detained when deciding whether to grant or deny bail.  Of course, if the legislature disagrees with our construction of RSA 597:2, III(a), it is free, within constitutional limits, to amend the statute.

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

7